UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CR-23-TLS |
| | ) | |
| VERNELL BROWN | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 507], filed on November 22, 2010, by Defendant Vernell Brown, who is now proceeding *pro se*. On December 17, the Government filed its Opposition to Brown's Motion [ECF No. 513], and on January 14, 2011, the Defendant filed his Reply to Government's Response [ECF No. 526]. For the reasons set forth in this Opinion and Order, the Court denies the Defendant's Motion and declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## BACKGROUND

On May 24, 2006, the Government charged Vernell A. Brown, along with co-conspirators Marlyn J. Barnes, Michael D. Alexander, Theodis Armstead, Herbert Hightower, and Melvin B. Taylor, with conspiring to possess with intent to distribute more than five kilograms of a mixture or substance containing a detectable amount of cocaine. (Indictment, ECF No. 53.) Barnes, Armstead, and Taylor were also charged with possessing a firearm in furtherance of the conspiracy. The charges were the result of an undercover drug sting in which a federal agent posed as a drug courier willing to help the Defendants rob a shipment of cocaine that the undercover agent was supposed to be transporting from Texas to a stash house in Fort

Wayne. The six Defendants came together in Fort Wayne to further plan and carry out the robbery.

Defendants Hightower and Alexander were the first to enter guilty pleas. (Hightower Plea Agreement Dec. 6, 2006, ECF No. 126; Alexander Plea Agreement Feb. 1, 2007, ECF No. 141.) On September 18, 2007, the remaining four Codefendants proceeded to trial. However, before the introduction of any evidence, Barnes informed the Court that if he was tried separately from the other Codefendants, he was willing to testify that Taylor, Brown, and Armstead did not come to Fort Wayne to assist in the conspiracy. The Court granted a mistrial and Armstead, Brown, and Taylor were granted permission to be tried separately from Barnes.

Barnes proceeded to trial, which resulted in convictions for conspiracy and possessing a firearm in furtherance of the conspiracy. (Barnes Verdicts entered Feb. 7, 2008, ECF No. 241.) Shortly before the March 18 joint trial of Armstead, Brown, and Taylor was scheduled to begin, Armstead entered into a plea agreement with the Government. (March 10, 2008, Armstead Plea Agreement, ECF No. 252.) Brown signed a plea agreement two days later. (March 12, 2008, Brown Plea Agreement, ECF No. 256.)

### A. Browns' Potential Penalties and Plea Agreement

The Indictment charged the Defendant with conspiring with others to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846, which provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. The object of the charged

conspiracy was possession of more than 5 kilograms of cocaine, which is governed by 21 U.S.C. § 841. Under § 841, a person who commits an offense involving 5 kilograms or more of cocaine "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A)(ii). However, if the defendant has a prior felony drug conviction the mandatory minimum sentence is raised to 20 years in prison. *Id.* ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment."). These penalties were listed in the Notice of Penalties the Government filed on May 5, 2006, before the Defendant's initial appearance and arraignment. On September 11, 2007, the Government filed an Information Pursuant to 21 U.S.C. § 851(a)(1), informing Brown that it intended to use his prior Michigan state conviction for possession of a narcotic controlled substance to seek an enhanced sentence. (ECF No. 194.)

Although the Indictment charged the Defendant with conspiring to possess more than 5 kilograms of cocaine, which would carry a potential term of imprisonment of not less than 20 years to life in light of his prior drug conviction, the Defendant's Plea Agreement contained a stipulation for a lower drug amount—between 2 and 3.5 kilograms. (Plea Agreement ¶ 7(d), ECF No. 256.) The statutory penalty for this quantity of cocaine is 5 to 40 years if the person does not have a prior felony drug offense, 21 U.S.C. § 841(b)(1)(B)(ii), and 10 years to life imprisonment if the person has a prior final drug conviction. *Id.* These potential penalties were set forth in paragraph 7(b) of the Plea Agreement and reiterated by the Court during the plea hearing. (Plea Agreement ¶ 7(b); Plea Hr'g Tr. 14–15.) Both the written Plea Agreement and the presiding judge specifically advised the Defendant that he was subject to the increased penalty because he

3

had a final prior conviction for a felony drug offense and the Government filed a notice pursuant to 21 U.S.C. § 851. During the change of plea hearing, the Defendant confirmed that he did not have any questions about the potential term of imprisonment, but expressed confusion about the difference between supervised release and ordinary parole, which the Court then explained. (Plea Hr'g Tr. 15.) The Court also confirmed the Defendant's understanding that his sentence would be determined using a combination of the advisory guidelines, possible authorized variances from the guidelines, and other statutory sentencing factors. (Plea Hr'g Tr. 16.) The Defendant's Plea Agreement contained a waiver of his right to appeal or collaterally attack his conviction or sentence. (Plea Agreement ¶ 7(f), ECF No. 256.)

B.  **Brown's Attempt to Withdraw His Guilty Plea**

One month after entering their pleas, Armstead and Brown testified for the Government at Taylor's trial. Hightower also testified, as he had during Barnes' trial. On April 18, a jury returned guilty verdicts on both counts of the Indictment against Taylor, as well as on the forfeiture allegation. More than two months after entering his plea of guilty, one month after testifying at Taylor's trial, and less than one week before his scheduled sentencing date, Brown filed a Notice of Mistake. He stated that he was withdrawing his plea and all prior testimony because he entered the guilty plea "under duress and feared life long imprisonment." (Notice of Mistake 2, ECF No. 315.) He also stated that he no longer consented to his counsel's representation and wanted to move forward with his motion *pro se*.

Through a series of hearings, the Court found that Brown knowingly and intelligently waived his right to counsel, despite being advised of the heavy burden of persuasion he would

4

bear to successfully withdraw his guilty plea. Toward this end, Brown continued to argue that he entered his guilty plea "under duress and fear [of] life long imprisonment" (ECF No. 328), and that he only signed the plea agreement and testified "under duress for fear of life long imprisonment" (ECF No. 342.)

By an Opinion and Order dated October 1, 2008, the Court denied the Defendant's Motion to Withdraw His Plea of Guilty, finding that the Defendant's argument that he was coerced to plead guilty because he feared life long imprisonment did not provide a fair and just reason to withdraw his plea. The Court afforded a strong presumption of veracity to the Defendant's declaration in open court that his plea was not the product of threats or coercion, and concluded that his counsel had not provided erroneous advise regarding his potential penalties. The Court found that the Defendant entered the plea as a calculated action intended to lessen his exposure, rather than as a rash and uninformed decision. The stipulated reduced drug amount in the Plea Agreement had the effect of lowering the mandatory minimum from 20 years to 10 years. In addition, the Agreement set forth the possibility that the Government would file a motion for his substantial assistance, which would have the effect of allowing the Court to sentence the Defendant below the mandatory minimum of 10 years if he truthfully testified at any trial to which he was called as a witness by the Government. (Plea Agreement ¶¶ 7(c)(ii) & 7(e), ECF No. 256.) The finding that the Defendant knowingly and voluntarily decided to plead guilty was further bolstered by the Defendant's own thoughts, put to paper in a letter he wrote to Taylor to explain his decision to plead guilty: "listen bro this is better judgement, minimal 20 years for me 1% chance to win i'll be a dame fool to go over there if dude said I did it it and herbi saying I did it." (Gov't Resp. Ex. 1, ECF Nos 361–2) ([sic] references omitted).)

On October 9, 2008, the Court sentenced Brown to 120 months of imprisonment, the statutorily required minimum sentence.

## C. The Defendant's Direct Appeal

On direct appeal, the Defendant attacked the validity of the Plea Agreement as a knowing and voluntary waiver of his rights. He argued that he did not knowingly and voluntarily waive his right to appeal because he was misinformed about the statutory minimum and maximum penalties. Although the Defendant was advised of the potential penalties, he claimed that the advice was erroneous because the enhancement under 21 U.S.C. § 841(b)(1)(B) should not have applied. The Defendant's position was that his prior Michigan conviction for mere possession of a controlled substance could not trigger the enhancement because it would not have been a felony under federal drug laws. The Court of Appeals, in an unpublished decision, stated that it was "not aware of any court holding that a state felony drug conviction for possession does not trigger the increased mandatory minimum in 21 U.S.C. § 841(a)(1)(B) because simple possession is not felony in the federal system." (*United States v. Brown*, No. 08-3753, Opinion and Order 6, ECF No. 495.) Accordingly, the court concluded that the Defendant was not misinformed about his potential sentencing liability and his guilty plea was not coerced. The Court of Appeals also concluded that because the waiver of appeal in the Plea Agreement was explicit, and because it was entered into voluntarily and knowingly, any argument regarding the sentence would be frivolous.[1]

---

[1] The Defendant's counsel on appeal filed an *Anders* brief because he could not identify any nonfrivolous issues for appeal.

**DISCUSSION**

Section 2255 allows a person convicted of a federal crime to seek to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is of jurisdictional or constitutional magnitude, or where there has been an error of law that "constitutes a fundamental defect which results in a complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). A motion under § 2255 "is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Therefore, issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances. *Olmstead*, 55 F.3d at 319; *see also Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Defendant has raised two distinct grounds for relief: (1) the Defendant should not have been subjected to an enhanced sentence under 21 U.S.C. § 851 because his prior conviction was not a qualifying controlled substance offense; and (2) the Defendant's counsel provided ineffective assistance when he did not challenge the § 851 enhancement and misled him regarding the impact of his prior conviction on his potential sentence. The Defendant argues that due to his counsel's ineffectiveness, he did not enter into a knowing and intelligent plea agreement. The Government has responded that the waiver provision of the Plea Agreement bars the action and that the Court should not consider the merits of his claims.

### A. First Ground for Relief Procedurally Barred from Habeas Review

The Defendant's first ground for relief, that his Michigan conviction did not trigger the enhancement under 21 U.S.C. § 841, was raised and decided on direct appeal. The Defendant has not pointed to any changed circumstances that warrant a reconsideration of this issue and he is procedurally barred from raising the issue. In the alternative, even if the Defendant is not procedurally barred, he cannot challenge his sentence or counsel's performance with respect to sentencing because he knowingly and voluntarily waived his right to collaterally attack the sentence as part of his Plea Agreement with the Government.

### B. Impact of Waiver on the Defendant's Challenges Related to His Sentence

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Waivers, including those that waive the right to collaterally attack a conviction or sentence, are enforceable as a general rule. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). An appellate waiver is enforced if its terms are "express and unambiguous," *see United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997), and if the record shows that the defendant "knowingly and voluntarily" entered into the agreement, *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001) (quoting *Jones*, 167 F.3d at 1144). The Seventh Circuit has held that only two claims can be raised in a § 2255 motion by a defendant who has expressly and unambiguously waived his right to collaterally attack his conviction and sentence: (1) the waiver was not knowingly and voluntarily made; or (2) counsel was ineffective in negotiating the waiver. *Jones*, 167 F.3d at 1145 (stating that "we reiterate that waivers are

8

enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the [plea agreement]"); *see also United States v. Rhodes*, 330 F.3d 949, 952 (7th Cir. 2003) (noting that a waiver does not deprive a defendant of the right to pursue a claim that the waiver was involuntarily made, was based on a constitutionally impermissible factor (such as race), or was made without the effective assistance of counsel); *United States v. Behrman*, 235 F.3d 1049, 1051–52 (7th Cir. 2000) (stating that all terms of a plea agreement stand or fall together, and that only arguments that would nullify the plea itself survive voluntary waivers of appeal and collateral attack). In *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000), the court applied its holding in *Jones* to bar an ineffective assistance of counsel claim that related only to counsel's performance with respect to sentencing. The court found that "[b]ecause the challenge has nothing to do with the issue of a deficient negotiation of the waiver, [the defendant] has waived his right to seek post-conviction relief." *Id.*

The Defendant makes no claim that the waiver term was not express and unambiguous. In Paragraph 7(f) of the Plea Agreement, he relayed his understanding that "the law gives a convicted person the right to appeal the conviction and the sentence imposed," that "no one can predict the precise sentence that will be imposed," and that "the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this Plea Agreement." (Plea Agreement ¶ 7(f), ECF No. 256.) Paragraph 7(f) continued:

> [W]ith this understanding and in consideration of the government's entry into this Plea Agreement, I expressly waive my right to appeal or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver

9

> or its negotiation, including any appeal under 18 U.S.C. § 3742 or any post-conviction proceeding, including but not limited to, *a proceeding under 28 U.S.C. § 2255*.

(*Id.*) (emphasis added). The waiver was express and unambiguous with respect to the filing of a § 2255 motion. Thus, the only claims to survive this waiver are those that the plea was not knowingly and voluntary made or that counsel was ineffective in negotiating the waiver.

The Defendant's first ground for relief, that the district court erroneously used his prior conviction to increase his statutory mandatory minimum sentence to 10 years, is an attack on the sentence the Court imposed, which has nothing to do with the negotiation of the Plea Agreement or the waiver or whether it was entered knowingly and voluntarily. Likewise, the claim that counsel provided ineffective assistance when he did not object to the enhancement at sentencing, (which he includes in his second ground for relief), is limited to sentencing and does not relate to the plea. *See Mason*, 211 F.3d at 1069; *see also Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000) (stating that ineffective assistance of counsel claims that relate to anything other than the plea negotiation—for example those related to counsel's performance at sentencing—are barred by an enforceable waiver). Because neither of these specific challenges relate to the validity of the waiver, they are foreclosed by the express and unambiguous terms of the Plea Agreement, as long as it was voluntarily entered.

## C.  General Claims of Coercion

Although not identified as a separate ground for relief, the Defendant appears to argue that he did not enter his guilty plea voluntarily because he was coerced by counsel. In his discussion of ground two for habeas relief, the Defendant points to his attempts to vacate his

10

guilty plea as evidence that he "did not like the plea and was harrased [sic] by counsel into accepting the guilty plea." (Mot. 15; ECF No. 507 at 28.)

To determine if a defendant knew and understood the plea agreement, a court examines the language of the plea agreement itself and also looks to the plea colloquy between the defendant and the judge. *Woolley*, 123 F.3d at 632; *see also United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007) (observing that the district court must inform the defendant of an appellate waiver during the Rule 11 colloquy). In the Plea Agreement, the Defendant stated his belief that his "lawyer ha[d] done all that anyone could do to counsel and assist [him], and that [he] . . . underst[oo]d the proceedings in this case against [him]." (Plea Agreement ¶ 10.) He also declared that he "offer[ed] [his] plea of guilty freely and voluntarily and of [his] own accord," and that "no promises ha[d] been made to [him] other than those contained in this agreement, nor ha[d] [he] been threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement." (Plea Agreement ¶ 11.)

During his change of plea hearing on March 14, 2008, the Court engaged the Defendant in a detailed colloquy regarding the terms of the Plea Agreement, his waiver of his rights, the consequences of pleading guilty, and his knowing and voluntary entry of his guilty plea. The Defendant has not pointed to any deficiency in the Court's Rule 11 colloquy. When a sentencing court engages a defendant in a detailed colloquy pursuant to Federal Rule of Criminal Procedure 11 and discusses with the defendant his rights and the consequences of his guilty plea, the testimony of the defendant at that hearing is accorded a "presumption of verity." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987) (stating that the "whole point of the plea proceeding (the Rule 11 colloquy) is to establish that the plea was knowingly and voluntarily made"); *see*

*also United States v. White*, 597 F.3d 863, 868 (7th Cir. 2010) (stating that "[v]oluntary responses made by a defendant under oath before an examining judge . . . are binding"). "[A] careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary," *United States v. Schuh,* 289 F.3d 968, 975 (7th Cir. 2002), and courts may consider a defendant's signature on the plea agreement and his statements during the plea colloquy as evidence of a knowing and voluntary waiver, *Jemison,* 237 F.3d at 917.

The record flatly contradicts the Defendant's claim that he did not enter a voluntary Plea Agreement. Thus, the express and unambiguous appellate and collateral attack waiver is enforceable and forecloses all claims that do not directly relate to counsel's performance with respect to the negotiation of the plea.

C.  **Claim of Ineffective Assistance of Counsel With Respect to Negotiation of Plea Agreement**

Although the appellate and collateral attack waiver in the Defendant's Plea Agreement is enforceable, one of the Defendant's claims is not foreclosed by the waiver. The Court must analyze on the merits the Defendant's second ground for relief because it can be construed as a "claim of ineffective assistance of counsel in connection with the negotiation of a [plea] agreement [that] cannot be barred by the agreement itself—the very product of the alleged ineffectiveness." *Jones*, 167 F.3d at 1145. The Defendant claims that his counsel and the Court advised him that he faced a mandatory minimum of ten years of imprisonment "as a result of the offense contained in the indictment, however, they NEVER advised that the reason for this enhancement was due to the prior possession conviction [the Defendant] ha[d] previously been

12

convicted of, and/or whether the prior conviction even qualified as a proper predicate conviction for purposes of section 851." (Mot. 25, ECF No. 507.) The Defendant argues that he would not have pleaded guilty had counsel properly advised him concerning the effect of his prior conviction. In essence, the Defendant is claiming that he accepted the waiver in reliance on deficient representation.

To successfully establish an ineffective assistance of counsel claim, a defendant must provide evidence that his attorney's performance fell below an objective standard of reasonableness (the "performance" prong) and that the counsel's deficiencies prejudiced his defense (the "prejudice" prong). *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984); *see also Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (ruling that "to demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty"). "This test is 'highly deferential' to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2006) (quoting *United States v. Scanga*, 225 F.3d 780, 783–84 (7th Cir. 2000)).

The Defendant's arguments are directed at his counsel's advice that he was facing a mandatory minimum sentence of 10 years imprisonment. With respect to his potential penalties, on September 11, 2007, the Government filed an Information Pursuant to 21 U.S.C. § 851(a)(1), advising the Defendant that it intended to seek an enhanced sentence on the basis of his prior conviction for possession of a narcotic controlled substance, filed in Cause Number 7003-004473-01, in the state of Michigan, 20th Judicial Circuit Court, Ottawa County, Michigan, for

13

which he had been sentenced to 18 months imprisonment on August 9, 2004. (Am. Information, ECF No. 194.) In paragraph 7(b) of the Plea Agreement, the Defendant indicated that he understood the potential penalties he faced:

> I understand that the maximum possible penalty that may be imposed upon me for my conviction of the offense charged in the Indictment to which I have agreed to plead guilty is as follows: If the government proves the amount of controlled substance involved was less than 5 kilogram but more than 500 grams of a mixture or substance which contains a detectable amount of cocaine, then imprisonment of not less than five years or more than forty years, a fine of not more than $2 million, or both such fine and imprisonment, a supervised release term of at least four years; and a $100.00 special assessment. *However, since I have a prior conviction for a felony drug offense which has become final, and the government has filed a notice pursuant to 21 U.S.C. § 851, I understand that I shall be sentenced to a term of imprisonment which may not be less than ten years and not more than life*, a fine of $4 million, or both such fine and imprisonment, a supervised release term of not more than five years, and a $100.00 special assessment.

(Plea Agreement ¶ 7(b), ECF No. 256 (emphasis added).) The Court read this provision to the Defendant during his change of plea hearing and asked him whether he had any questions about the potential penalties. (Plea Hr'g Tr. 14–15.) This record refutes the Defendant's claim that he was not advised that the reason he faced a 10 year mandatory minimum sentence was due to his Michigan conviction for possessing controlled substances. The Information, the Plea Agreement, and the Court's colloquy all addressed the prior conviction in relation to his sentence.

The Defendant also argues that, as a matter of law, his Michigan conviction does not qualify as a prior "felony drug offense" that may expose him to greater penalties under the Controlled Substances Act because simple possession of a controlled substance is not a felony under the Act. Therefore, he argues, his counsel provided deficient advice when he informed him that he was facing a 10-year mandatory minimum. The authority the Defendant cites, *Lopez v. Gonzales*, 549 U.S. 47 (2006), does not apply to the circumstances of this case. In *Lopez*, the

14

issue was whether a particular offense was an "aggravated felony" under the Immigration and Nationality Act. Here, the question is whether the Michigan conviction is a "prior conviction for a felony drug offense" that "has become final" under 21 U.S.C. § 841(b).

The plain language of the Controlled Substances Act indicates that the Defendant's argument is without merit because drug offenses involving mere possession trigger the enhancement, as long as they are punishable by imprisonment for more than one year. The Act defines "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). The definition is not limited to crimes that are felonies under the Controlled Substance Act, or to crimes involving distribution or an intent to distribute. The conviction must simply derive from a law that prohibits or restricts conduct "relating to" drugs and be "punishable by imprisonment for more than one year." By way of comparison, the Court notes that the definition of a "serious drug offense" in 18 U.S.C. § 924(e), when it is referring to a state court conviction, is defined as an "offense under State law, involving the manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." Thus, Congress has shown that it is capable of limiting qualifying drug offenses to those that are more serious than mere possession. It did not do so for purposes of the enhancement under § 841(b). *See United States v. Rosales*, 516 F.3d 749, 758 (9th Cir. 2008) (holding that possessing illegal drugs is conduct relating to those drugs and that any argument that a conviction for simple possession does not qualify as a felony drug offense under 21 U.S.C. § 841 must fail); *see also United States v. Curry*, 404 F.3d 316, 319 (5th Cir. 2005); *United*

*States v. Spikes*, 158 F.3d 913, 922 (6th Cir. 1998); and *United States v. Hansley*, 54 F.3d 708, 718 (11th Cir. 1995).

Because the plain language of the definition of a felony drug offense supports using state court felony convictions for simple possession of a controlled substance as a qualifying prior conviction, counsel's advice regarding potential penalties cannot be considered deficient performance. This forecloses any claim that counsel's ineffectiveness rendered the Defendant's plea, including the waiver provision, unknowing or involuntary. Accordingly, § 2255 relief is not available for the second ground alleged in the Defendant's Motion. Because the Defendant's Motion and the record of this case conclusively shows that he is not entitled to relief, the Court may deny an evidentiary hearing. *See Torzala v. United States*, 545 F.3d 517, 525 (7th Cir. 2008); 28 U.S.C. § 2255(b).

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where the district court has

rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate"). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here because no reasonable jurist could conclude that the Defendant's first ground for relief was not already decided on direct appeal, or that he did not knowingly and voluntarily plead guilty pursuant to a Plea Agreement that contained a waiver of the right to collaterally attack his conviction or sentence. In addition, no reasonable jurist could conclude that the Court's assessment of the Sixth Amendment claim was debatable or wrong where counsel did not offer erroneous advice in connection with the plea. The Court will not issue the Defendant a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 507] and declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

SO ORDERED on May 16, 2011.

                                                s/ Theresa L. Springmann  
                                                THERESA L. SPRINGMANN  
                                                UNITED STATES DISTRICT COURT